AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>iPhone in a Black Case seized from Carmen MIRANDA<br>on February 25, 2020 (Newport News Item #5) | )<br>)<br>)  Case No. 4:20-sw- 36<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

iPhone in a Black Case seized from Carmen MIRANDA on February 25, 2020 (Newport News Item #5)

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to distribute and possess with intent to distribute heroin & cocaine |
| 21 U.S.C. 841(a)(1) & (b)(1)(C) | Distribution of heroin |
| 21 U.S.C. 843(b) | Use of a communication facility in furtherance of a drug trafficking crime |

The application is based on these facts:

Please see the attached affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO Gaelan Doskey, DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means)*.

Date: _____ 04/03/2020 _____

Douglas E. Miller, USMJ
2020.04.03 12:36:16 -04'00'
*Judge's signature*

City and state: Norfolk, VA

Douglas E. Miller, U.S. Magistrate Judge

*Printed name and title*

## ATTACHMENT B

Description of items to be seized/evidence sought:

a.  SIM card(s);

b.  The number of the cell phone; lists of telephone numbers, names and addresses of the user of said telephone numbers stored in the phonebook or the contact list of the phone; records and/or data of all outgoing calls, incoming calls, and missed calls, voicemail messages, text messages, instant (IM) messages, e-mail addresses and messages, IP logs, voice recordings, stored memos and calendars, still photographic images, video photographic images, GPS and map data and any other stored electronic information related to a violation of Title 21, United States Code, Sections 846, 841, and 843(b);

c.  All stored passwords, encryption keys, access codes, SIM passwords, and geographical information;

d.  Proof of ownership to include correspondence, registration keys or similar items;

e.  Any communications (including, but limited to telephone calls, voice mails, SMS and MMS text messages, instant messages, e-mails, and communications via social media) relating to a violation of Title 21, United States Code, Sections 846, 841, and 843(b);

f.  All bank records, checks credit card bills, account information, and other financial records relating to the procurement, possession, sale purchase, or transference of drugs/controlled substances, drug paraphernalia, and the proceeds of the distribution of controlled substances;

g.  Photographic or other images relating to a violation of Title 21, United States Code, Section 846, 841, and 843(b);

h.  Evidence of user attribution showing who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, address books, registry entries, configuration files, usernames and passwords, encryption keys, media access control (MAC) addresses, documents, browsing history, user profiles, e-mail, telephone and e-mail contacts, "chat," instant messaging logs, photographs, videos, social media, and correspondence;

i.  Records evidencing the use of the Device to facilitate controlled substances procurement, sale, purchase or trafficking using the Internet, including: Records of Internet Protocol addresses used and records of Internet activity, including chats, online email, firewall logs, caches, browsing history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

1



This warrant is for the authorization to read, retrieve, image, copy and seize information stored and contained on the above described data source and for authorization to present these items to persons capable of conducting such examinations and recovery. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form contained in or used by the device.



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

IN RE:

THE SEARCH OF THE PHONES AND
DEVICES LISTED IN ATTACHMENT A

Case No. 4:20-sw-_____

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF APPLICATION
## FOR ISSUANCE OF SEARCH WARRANTS

Your affiant, Gaelan A. Doskey, being duly sworn and deposed, states as follows:

### INTRODUCTION

1.     Your affiant is a Task Force Officer (TFO) with the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA), and is an investigative or law enforcement officer of the United States (U.S.) within the meaning of Title 18, United States Code (U.S.C.), Section (§) 2510(7) and is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, U.S.C., § 2516 and has been provided Title 21 authority.

2.     Your affiant is currently a member of a DEA Task Force, and has been closely working with the High Intensity Drug Trafficking Area (HIDTA) Taskforce conducting the investigation referred to in this affidavit.  This HIDTA taskforce investigation involves a multi-faceted criminal organization engaged in the importation, interstate transportation, and distribution of multi-kilogram quantities of cocaine, cocaine base, heroin, and fentanyl, as well as the laundering of U.S. currency.  The criminal activity of this drug trafficking organization (DTO) involves overt acts that have been committed since at least 2011 throughout the U.S., including the Eastern District of Virginia (EDVA).

### DEVICES TO BE SEARCHED

3.     Your affiant makes this affidavit in support of an application for a search warrant for the

following devices within the EDVA:

    a.    **White LG Smartphone, MEID: 089903642504556852 (Newport News Item #2).**

    b.    **iPad in a Pink Case, Model: A2197, S/N: F9FZGFEAMF3P (Newport News Item # 4).**

    c.    **iPhone in a Black Case seized from Carmen MIRANDA on February 25, 2020 (Newport News Item #5).**

    d.    **Black/Grey iPhone S, Model: A1688, FCCID: BCG-E2946A (Newport News Item #7).**

    e.    **Black iPhone in a Black "Blackweb" Case  (Newport News Item #8).**

## EXPERIENCE AND TRAINING OF AFFIANT

4.    I, Gaelan A. Doskey, am an investigative or law enforcement officer of the United States of America within the meaning of Section 2510(7) of Title 18, United States Code (USC), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code, and has been provided Title 21 authority.

5.    Your affiant has been employed as a Police Officer with the City of Newport News, VA since 2007. From 2007 until August 2011 your affiant worked as a uniformed District Patrol Officer, High Impact Patrol Officer, and Community Response Unit Officer. From August 2011 to the present, your affiant has been assigned as a detective with the Newport News Organized Crime Division (OCD). From August 2011 until December 2013 your affiant was assigned to the Drug Enforcement Unit, responsible for handling street level drug crimes. From



December 2013 until December 2017 your affiant was assigned to the Mid Level Unit, responsible for handling investigations of individuals involved in mid to upper level drug distribution activities. From December 2017 until the present your affiant has been assigned as a Task Force Officer with the Drug Enforcement Administration (DEA), and assigned to the Hampton Post of Duty. Your affiant has been involved in federal investigations focusing on narcotics trafficking involving the unlawful importation, transportation, and distribution of controlled substances, related money laundering activities, and their related criminal activity. Through investigations and training, your affiant has become familiar with the methods and schemes employed by narcotics traffickers to obtain, smuggle and distribute illegal narcotics and launder their drug proceeds. Your affiant has also become familiar with and utilized a wide variety of investigative techniques, including but not limited to the development of cooperating sources, source debriefings, physical surveillance, telephone call detail record and CSLI analysis, the use of PRTT devices, and the interception of wire and electronic communications. These investigations have led to numerous arrests and convictions for violations of federal laws.

## EXPERIENCE AND TRAINING OF THE INVESTIGATIVE TEAM

6.      This HIDTA taskforce investigation is comprised of S/As of HSI as well as representatives from the DEA, Newport News Police Department (NNPD), the Hampton Police Division (HPD), the Virginia Department of State Police (VSP), and a contract analyst from the United States Attorney's Office (USAO). The respective S/As, officers, detectives, and analysts assigned to this HIDTA taskforce investigation are collectively hereinafter referred to as "the investigative team." Collectively, your affiant and other members of the investigative team have participated in the preparation of numerous affidavits for search and/or seizure warrants and the interception of wire



3

and electronic communications, participated in the execution of numerous search and seizure warrants, and conducted hundreds of interviews and debriefings in connection with violent crime, drug trafficking, and financial investigations. As such, the investigative team is familiar with the operation of sophisticated DTOs.

7.      Collectively, your affiant and other members of the investigative team have participated in the preparation of numerous affidavits for search and/or seizure warrants and participated in the execution of numerous searches and seizure warrants in connection with joint financial/drug investigations. These warrants involved the search of targets' residences, offices, garages, vehicles, storage units, and bank safe deposit boxes. Materials searched for and recovered at these locations included narcotics; drug paraphernalia; records pertaining to the purchase, sale, and distribution of drugs; records relating to the expenditures of proceeds from drug distribution; currency; and various assets purchased with the proceeds from drug trafficking.

8.      Your affiant has personally participated in the investigation of the offenses described in this affidavit and, as a result of your affiant's participation in this HIDTA taskforce investigation and a review of reports made to your affiant by other members of the investigative team, your affiant is familiar with the facts and circumstances of this HIDTA taskforce investigation. On the basis of this familiarity, and on the basis of other information, which your affiant has reviewed and determined to be reliable, your affiant alleges the following:

## TECHNIQUES USED BY DRUG TRAFFICKERS

9.      Based on the combined training and experience of members of the investigative team and their participation in other investigations involving federal violations of the Drug Control Act and the Money Laundering Control Act and related offenses, your affiant knows:

a.      That drug traffickers often purchase and/or title their assets in fictitious names,



4

aliases, or the names of relatives, associates, or business entities to avoid detection of these assets by law enforcement officers;

b.        That even though these assets are in names of those other than a targeted drug trafficker, the drug trafficker actually owns and continues to use these assets and exercise dominion and control over them;

c.        That drug traffickers must maintain, on hand, large amounts of U. S. currency in order to maintain and finance their on-going drug businesses;

d.        That it is common for drug traffickers to maintain books, records, receipts, notes, ledgers, airline instruments, and other papers relating to the transportation, ordering, purchase, sale, and distribution of controlled substances.   The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them;

e.        That it is common for drug traffickers to secrete contraband including fentanyl, cocaine, cocaine base, and heroin, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their businesses, and/or other locations such as self-storage units over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities;

f.        That, in order to accomplish this concealment, drug traffickers frequently build "stash" places within their residences, their businesses and/or other locations (including buried on the grounds thereof).   There are a number of publications available instructing where and how to build "stash" places.   Copies of these types of publications have been found in the residences of drug traffickers;

5

g.      That it is common for persons involved in drug trafficking to maintain evidence relating to their obtaining, secreting, transferring and concealing of drugs and/or caches of drugs, large amounts of currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, wire transfers, money drafts, letters of credit, safe deposit box keys, money wrappers, and other evidence of financial transactions. These items are maintained by the drug traffickers within their residences, their businesses or other locations such as self-storage units over which they maintain dominion and control and/or buried on the grounds thereof;

h.      That drug traffickers amass large proceeds from the sale of drugs and they attempt to legitimize these profits through money laundering activities. To accomplish these goals, drug traffickers utilize, including but not limited to: domestic and international banks and their attendant services, cashier's checks, money orders, money drafts, letters of credit, attorneys, accountants, casinos, real estate, money remitter services, shell corporations and business fronts, and otherwise legitimate businesses that generate large quantities of currency;

i.      That the sale of fentanyl, cocaine base, cocaine, heroin, and other controlled substances generates large quantities of U.S. currency in small denominations (commonly referred to as "street money");

j.      That it is common for drug traffickers to physically handle and count the "street money" after receiving it in exchange for drugs, thereby leaving residue traces of the drug on the "street money." That law enforcement agencies own dogs that are trained to react to the scent of controlled substances and residue traces of controlled substances; and that those

6

trained dogs have reacted to drug tainted currency negotiated at banks and concealed in the residences of drug traffickers and elsewhere;

k.      That it is common for drug traffickers to separate their "street money" by denomination and put this currency in rubber banded stacks in varying $1,000 increments to facilitate quick counting;

l.      That Courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried, and concealed, may establish probable cause that there is a substantial connection between the questionable currency and drug transactions;

m.      That it is common for drug traffickers to exchange "street money" (small denominations) for large denominations of currency that can be concealed in secure locations within their residences, their businesses, and/or other locations, and/or buried on the grounds thereof, in order to amass a larger amount of currency in less area;

n.      That the Currency Transaction Report (CTR) [IRS Form 4789], which is required to be completed and filed with IRS by all financial institutions on every currency transaction which exceeds $10,000, causes problems for drug traffickers when they attempt to negotiate their illegal proceeds at a financial institution;

o.      That, in order to evade the filing of a CTR, drug traffickers often "structure" their currency transactions so that no one transaction exceeds $10,000, or they provide false or misleading information in an attempt to legitimize or conceal the source and/or ownership of the currency, or they have someone conduct their currency transactions on their behalf;

p.      That the Courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed; in particular, drug trafficking;

7

q.      It is common for individuals who are involved in illegal activities, to include drug trafficking, to evade their individual income taxes by understating their income or not filing individual income tax returns at all;

r.      That the use of Western Union and other money remitting facilities is a common method for drug traffickers to transfer money out of state for payment of drugs and the laundering of drug proceeds;

s.      That the use of overnight courier services such as Federal Express (FED EX), United Parcel Service (UPS), and United States Postal Service (USPS) is a common method for drug traffickers to transfer money and drugs out of state;

t.      That drug traffickers commonly maintain addresses or telephone numbers in books, papers, pocket telephone cards, wrist watches, smart phones and smart watches which reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization;

u.      That it is common for drug traffickers to maintain photographs and videos of themselves with their associates of the drug trafficking organization, drugs and/or guns, and assets including large amounts of U.S. currency and vehicles.  Drug traffickers frequently store such things on their mobile phones;

v.      That drug traffickers commonly have in their possession, that is on their person, at their residences and/or their businesses, firearms, including but not limited to:  handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons.  Said firearms are used to protect and secure a drug trafficker's property.  Such property may include, but is not limited to:  drugs, drugs paraphernalia, jewelry, books, records, and U.S. currency;

8

w.      That it is common for drug traffickers to use, cellular/smart telephones, residential and business telephones, computers, and electronic tablets to keep in communication with one another and to manage their drug proceeds; and

x.      That drug traffickers own and maintain at their residences and businesses, facsimile machines, personal desktop and laptop computers and other similar and related devices, including monitors, printers, keyboards, CDs, DVDs, electronic tablets, operating manuals, and the like, which are used in the commission of criminal offenses and/or which contain evidence of criminal offenses, including, for example, programs to allow users to manage and to track their financial portfolios and generate, transfer, count, record, and/or store the information listed in the above paragraphs.

## SOURCES OF PROBABLE CAUSE

10.     The facts comprising the basis for probable cause in this affidavit are derived from the following sources:

a.      A review of investigative reports, laboratory reports, interviews with law enforcement officers who have made arrests of members of this criminal organization;

b.      A review and analysis of physical, documentary, and electronic evidence seized during the arrest of members of this criminal organization and through the subsequent execution of search warrants relating to those arrests;

c.      Physical surveillance of members of this criminal organization, their residences, and places of employment conducted by members of the investigative team;

d.      Independent investigation by the investigative team including, but not limited to, a review of government records from the National Crime Information Center (NCIC); El Paso Intelligence Center (EPIC); Treasury Enforcement Computer System (TECS);



9

Autotrack; Lexis-Nexis; Federal Bureau of Investigation (FBI); ICE; DEA; Department of Motor Vehicles (DMV) records from various states; public utility and real estate records in VA, CA, and NC.

e.      Information provided to the investigative team by confidential sources (CS) and cooperating defendants (CD).

## BASIS FOR FACTS CONTAINED IN AFFIDAVIT

11.     Since this affidavit is being submitted only for the limited purpose of securing authorization for search warrants, your affiant has not included each and every fact known to the investigative team concerning this investigation.  Rather, your affiant has set forth only those facts that are believed to be necessary to establish probable cause to search the aforementioned target devices. The specific target devices and specific target subjects are **BOLDED** for reference.

12.     Your affiant has personally participated in the investigation of the offenses described in this affidavit.  As a result of your affiant's participation in this investigation and a review of reports made to your affiant by other members of the investigative team, your affiant is familiar with the circumstances of this investigation.  On the basis of this familiarity, and on the basis of the other information, which I have reviewed and determined to be reliable, your affiant alleges the following:

## FACTS AND CIRCUMSTANCES

### Introduction

13.     In January 2018, members of the investigative team began conducting an investigation regarding a poly-drug DTO that supplies cocaine, cocaine base (crack), heroin, heroin-mixed with fentanyl, fentanyl, and marijuana to many different distributors and customers within the

for the day to day distribution of narcotics beginning in September 2018.

16.     On October 8, 2018, at approximately 6:31 p.m., cellular telephone number (757) 738-0454 was intercepted on Target Telephone #3, communicating with Walters. Members of the investigative team identified the number intercepted as being utilized by **MIRANDA**.

17.     In March 2016, members of the investigative team received records from MetroPCS showing **MIRANDA** as the subscriber for cellular telephone (757) 738-0454, with a listed address of 224 Troy Drive, Newport News, VA 23606. This residence is within the Warwick Mobile Homes trailer park.   The records provided by MetroPCS indicated that cellular telephone (757) 738-0454 had been subscribed to MIRANDA since 2014.   Multiple cellular phones have been downloaded listing **MIRANDA** as the contact for the same telephone number. In June 2018, members of the investigative team received phone records from Sprint showing **MIRANDA** as the subscriber for cellular telephone (757)738-0454 since November 2017.

18.     During the course of intercepting Target Telephone #3 **MIRANDA** was intercepted on numerous occasions to include both voice and text messaging. During the interception period, there were 2 pertinent voice calls and 231 pertinent text messages intercepted between **MIRANDA** and Target Telephone #3.

**October 10, 2018, Surveillance of Walters delivering narcotics**

19.     On October 10, 2018, at approximately 11:31 a.m., Walters received a text message from **MIRANDA** stating *"I need 10 boy and ½ girls"*. Members of the investigative team believed this message to mean **MIRANDA** was requesting 10 grams of heroin and 14 grams of cocaine. Walters explained to **MIRANDA** via text he had the heroin, but did not have cocaine at that time. While communicating through text messaging, Walters agreed to bring the heroin



12

to **MIRANDA** in 30 minutes.

20.     At approximately 1:16 p.m., members of the investigative team began conducting surveillance on Walters. Members of the investigative team followed Walters into the area of Warwick Mobile Homes near Hogan Drive and Jefferson Avenue within the City of Newport News. At approximately 1:28 p.m., Walters texted **MIRANDA** stating *"here"*. At approximately 1:30 p.m., members of the investigative team observed Felix Omar Rodriguez-Roig aka Omar (hereinafter referred to as Rodriguez-Roig) walking toward Walters' vehicle. Members of the investigative team know Rodriguez-Roig to be in a relationship with **MIRANDA**. At approximately 1:45 p.m., members of the investigative team observed Walters leaving the area of Warwick Mobile Homes.

**October 22, 2018, Interceptions of Carmen MIRANDA**

21.     On October 22, 2018, at approximately 10:04 a.m., **MIRANDA** texted Walters stating *"5 g boys"*. Members of the investigative team interpreted this message to mean **MIRANDA** was ordering 5 grams of heroin from Walters. Walters responded by stating *"Ok"*. **MIRANDA** continued to text Walters and informed him she was currently at Riverside Hospital. Walters stated he would see her when she left, but **MIRANDA** explained she would be in the hospital for multiple days.

22.     At approximately 10:09 a.m., **MIRANDA** texted Walters stating *"Omar pick up in the parking"*. Members of the investigative team interpreted this message to mean Rodriguez-Roig would pick up the heroin from Walters in the parking lot of the Riverside Hospital. Walters responded by saying he would call when he was close. At approximately 3:50 p.m., Walters text **MIRANDA** stating *"Here"*. Walters sent multiple text messages to **MIRANDA** without any replies. **MIRANDA** replied hours later informing Walters that she was in surgery.



13

23.     On October 23, 2018, at approximately 04:18 a.m., **MIRANDA** text Walters *"when you can bring me 10"*. Members of the investigative team understood this message to mean MIRANDA was ordering 10 grams of heroin from Walters. At approximately 8:20 a.m., Walters replied *"Ok"*. Walters asked **MIRANDA** where she was and **MIRANDA** confirmed she was still located at Riverside Hospital. At approximately 9:22 a.m., **MIRANDA** texted Walters stating *"Omar waiting in the parking"*. At approximately 10:08 a.m., Walters advised **MIRANDA** he was there. At approximately 10:10 a.m., Walters texted **MIRANDA** stating *"I got him"*, which members of the investigative team understood Walters had located Rodriguez-Roig in the Riverside Hospital parking lot.

**Interviews of Cooperating Witnesses**

24.     On November 7, 2018, members of the investigative team interviewed Cooperating Witness 1[1] (hereinafter referred to as CW-1) regarding ongoing criminal activity. Members of the investigative team showed CW-1 a digital photograph of **MIRANDA**. CW-1 identified the digital photograph of **MIRANDA** as Carmen **MIRANDA**. At the time of the interview, CW-1 had known **MIRANDA** for approximately 2 years. CW-1 admitted to purchasing heroin from **MIRANDA** on multiple occasions. CW-1 knew **MIRANDA** to own multiple trailers within Warwick Mobile Homes.

25.     CW-1 was shown a digital photograph of Rodriguez-Roig. CW-1 identified the photograph as **MIRANDA**'s husband. CW-1 admitted to purchasing heroin from Rodriguez-Roig on multiple occasions.

---

[1] CW-1 has made statements against their penal interest. CW-1 has provided information to members of the investigative team that has been found true and reliable.



14

Hampton Roads area of VA. During the investigation, members of the investigative team identified a drug distributor within the City of Newport News identified as **Carmen MIRANDA**. Based upon the investigation, **MIRANDA** was identified as utilizing multiple trailers within the Warwick Mobile Homes trailer park in Newport News to facilitate her distribution of cocaine, cocaine base, and heroin.

### T-III Intercept of Target Telephone #2, Target Telephone #3, and Target Telephone #4

14.     On October 5, 2018, the Honorable Arenda L. Wright Allen, United States District Judge for the EDVA, signed an Order authorizing the interception of wire and electronic communications occurring over T-Mobile cellular telephone bearing mobile directory number ("MDN") (757) 358-4761 (hereinafter "Target Telephone #2") and T-Mobile cellular telephone bearing MDN (415) 415-7080 (hereinafter "Target Telephone #3"), which were being used by Damarcus Mackie. The Court's Order also authorized the "roving" interception of wire and electronic communications occurring to and from any cellular telephones used by Mackie during the 30-day authorization period. Due to Mackie dropping Target Telephone #3, on October 8, 2018, the investigative team initiated the "roving" interception of wire and electronic communications occurring over Target Telephone #4, a T-Mobile cellular telephone bearing MDN (757) 238-1564. Pursuant to the Court's Order of October 5, 2018, authorizing the interception of wire and electronic communications occurring over Target Telephone #4, monitoring commenced at 8:00 a.m. on Tuesday, October 9, 2018.

### T-III Interceptions of CARMEN MIRANDA

15.     The interception of wire and electronic communications confirmed to the investigative team that Mackie directed Travis Walters to take over the "customer phone" and be responsible



11

26.     Further, CW-1 provided information that multiple individuals, to include **MIRANDA** and Rodriguez-Roig, are known to utilize and answer a "community" phone, which is utilized to facilitate the distribution of narcotics by **MIRANDA** and other members of her organization.

**Interviews of Cooperating Defendants**

27.     In August 2019, Cooperating Defendant 1[2] (hereinafter referred to as CD-1) was placed in custody for charges related to the distribution of heroin and cocaine within the Eastern District of Virginia.  During CD-1's arrest, they were advised of their Miranda rights, waived these rights, and agreed to speak to members of the investigative team.  During this interview, CD-1 provided numerous statements against their own penal interest, to include admitting to the distribution of cocaine and heroin.  During this statement, CD-1 identified a photograph of **MIRANDA**.  CD-1 admitted to supplying **MIRANDA** with 8 to 10 grams of heroin at a time. CD-1 explained when speaking with **MIRANDA** "boys" was code for heroin and "girls" was code for cocaine.

28.     In February 2020, Cooperating Defendant 2[3] (hereinafter referred to as CD-2) met with and was debriefed by members of the investigative team pursuant to the standard terms of a cooperation agreement with the United States. CD-2 identified a photograph of **MIRANDA**. CD-2 admitted to supplying **MIRANDA** with heroin and cocaine. CD-2 admitted to supplying **MIRANDA** with at least 200 grams of heroin from the time they met in 2017 until September of 2018. CD-2 admitted to distributing narcotics to **MIRANDA** near her trailer. CD-2 identified

---

[2] CD-1 provided information against their penal interest. CD-1 provided information that was found to be true and reliable. CD-1's information was confirmed through various investigative means.
[3] CD-2 pled guilty to their role in a conspiracy to distribute heroin and cocaine within the Eastern District of Virginia.  As a part of CD-2's cooperation agreement in CD-2's plea agreement, CD-2 provided information on their involvement in the conspiracy. CD-2's information was found to be true and reliable. CD-2's information was confirmed through various investigative means.



a photograph of Rodriguez-Roig as **MIRANDA's** husband. CD-2 advised Rodriguez-Roig would pick up narcotics for **MIRANDA**.

**Drug Complaints Received**

29.   In March 2018, an anonymous complainant provided information to the Newport News Police Department in relation to **MIRANDA** and her distribution of narcotics. This complainant indicated that a "Suhey Alvarado" was involved in distributing cocaine and heroin from multiple trailers within the Warwick Mobile Homes trailer park in Newport News, VA. Further, the complainant indicated that "Suhey Alvarado" had a boyfriend by the name of Omar Rodriguez, that her sons and family are involved in the distribution of narcotics, and that she owns a restaurant in Denbigh. All of this information is known to be accurate about **MIRANDA**. Further, it is known to members of the investigative team, that **MIRANDA's** Facebook.com account web address is "https://www.facebook.com/suhey.miranda.9".

30.   In July 2018, an anonymous complainant provided information to the Newport News Police Department regarding **MIRANDA** and her distribution of narcotics. This complainant indicated that there was a Puerto Rican family involved in disturbing heroin, cocaine and prescription pills from multiple trailers within the Warwick Mobile Homes trailer park in Newport News, VA. This complainant provided the address of one of the trailers as 224 Troy Drive, Newport News, VA, and described a black Acura sedan that is parked in front of the residence. The complainant advised that the registration for the vehicle was a Virginia license plate of UXR-6343, which is registered to **MIRANDA**. The complainant further stated that an older female was responsible for selling from this residence.

**CARMEN MIRANDA's connection to 322 Hogan Drive, Newport News, VA 23606**



16

31. During the month of July 2018 and continuing to the present, Cooperating Witness 2[4] (hereinafter referred to as CW-2) began providing information about **MIRANDA** and her involvement in the distribution of narcotics. This included that **MIRANDA** was distributing heroin and cocaine from the residence of 224 Troy Drive, Newport News, VA 23606. CW-2 further advised that **MIRANDA**'s mother was residing at 332 Hogan Drive, Newport News, VA 23606, and that other members of **MIRANDA**'s family were distributing narcotics from that residence.

32. During the month of February 2020, members of the investigative team received information that the management of the Warwick Mobile Homes trailer park in Newport News, VA was evicting the occupants of 224 Troy Drive, Newport News, VA.

33. During that same month, CW-2 provided information that **MIRANDA** was utilizing the trailer of 322 Hogan Drive, Newport News, VA 23606 to facilitate the distribution of narcotics. CW-2 knew that this was in part due to the recent eviction proceedings that were taking place in the Warwick Mobile Homes trailer park in Newport News, VA. CW-2 had observed **MIRANDA** selling narcotics from the residence of 322 Hogan Drive, Newport News, VA 23606 during the daytime. CW-2 further provided information about **MIRANDA**, and her use of a black Acura sedan bearing Virginia registration of UXR-6343 to facilitate her distribution of narcotics. This is the same vehicle that was described by the anonymous complainant in July 2018.

## February 20, 2020 Surveillance

34. On February 20, 2020, members of the investigative team conducted surveillance on multiple trailers within the Warwick Mobile Homes trailer park in Newport News, VA. One of

---

[4] CW-2 has provided information that has been found to be true and reliable by members of the investigative team. CW-2 has provided information against their penal interest. CW-2 has also conducted multiple controlled narcotics



these trailers included the residence of 322 Hogan Drive, Newport News, 23606. While conducting surveillance, members of the investigative team observed a black Acura sedan bearing Virginia registration UXR-6343 parked in front of the residence. This is also the same vehicle that was described by the anonymous complainant in July 2018.

### February 21, 2020, Controlled Purchase

35.     On February 21, 2020, members of the investigative team utilized Cooperating Witness 3[5] (hereinafter referred to as CW-3) to conduct a controlled purchase of heroin from members of **MIRANDA**'s narcotics distribution organization. CW-3 was followed to the area of the Warwick Mobile Homes trailer park in Newport News, VA. During the course of this operation, contact was made with **MIRANDA** by telephone, who made arrangements for heroin to be distributed at 322 Hogan Drive, Newport News, VA 23606. CW-3 was able to make telephonic contact with Luis Miguel **DEJESUS-Franco**, who entered the residence of 322 Hogan Drive, Newport News, VA 23606, and exited with a plastic bag containing heroin. This plastic bag containing heroin was exchanged with CW-3 for an amount of U.S. currency. Members of the investigative team had previously identified **DEJESUS-Franco** as a heroin distributor and co-conspirator of **MIRANDA**.

36.     After conducting this controlled purchase, CW-3 was followed from the area of Warwick Mobile Homes, and turned over the plastic bag containing heroin to members of the investigative team. Members of the investigative team field tested the heroin, yielding a positive field test.

### February 11, 2020 Third Superseding Indictment

37.     On February 11, 2020, the federal grand jury for the Eastern District of Virginia, sitting

---

purchases.
[5] CW-3 has provided information which has been found to be true and reliable. CW-3 has conducted multiple

in Newport News, issued a third superseding indictment charging **MIRANDA** with a conspiracy to distribute and possess with intent to distribute heroin and cocaine, as well as use of a communication facility in furtherance of drug trafficking.   This third superseding indictment is assigned case number 4:19-cr-47. These charges are based on **MIRANDA's** drug trafficking activities at the Warwick Mobile Homes Trailer Park in Newport News, as described in part herein.

### February 25, 2020 Search Warrant and Arrest of MIRANDA

38.    On February 24, 2020, members of the investigative team sought, and obtained, a federal search warrant for the residence of 322 Hogan Drive, Newport News, VA 23606. This search warrant was issued by the Honorable Robert J. Krask.

39.    On February 25, 2020 members of the investigative team executed this federal search warrant at 322 Hogan Drive, Newport News, VA, 23606.  The search warrant was executed at 9:17 p.m. During the execution of the search warrant, **DEJESUS-Franco** and Carmen Alvarado-Rivera (Carmen **MIRNADA's** mother) were detained in the front hallway.

40.    At the same time that the search warrant was being executed and the residence cleared, members of the investigative team set up surveillance on 241 Hogan Drive, Newport News, VA 23606. This had been previously identified as a residence that **MIRANDA** was known to reside at and distribute heroin from.  While surveillance was set up, **MIRANDA** was observed exiting the trailer. Members of the investigative team placed **MIRANDA** in custody for her outstanding federal indictment. When she was placed in custody, **MIRANDA** was found to be holding an **iPad in a Pink Case, Model: A1588, FCCID: BCG-E2946A (later labeled as Newport News Item # 4)** and an **iPhone in a Black Case (Newport News Item #5)**. **MIRANDA** was also in possession of a purse when she was placed in custody.  Search incident

controlled narcotics purchases.



to arrest revealed a **Black/Grey iPhone S, Model: A1688, FCCID: BCG-E2946A (Newport News Item #7)** and $1848.00 in U.S. currency in **MIRNADA's** purse.

41.  During a search of the residence of 322 Hogan Drive, Newport News, VA 23606, agents located the following: two plastic bags containing suspected marijuana in a white clothes hamper in the bathroom, a **White LG Smartphone, MEID: 089903642504556852 (Newport News Item #2)** in a case in the hallway, and $688.00 in U.S. currency, in a dresser in the middle right bedroom.

42.  Members of the investigative team located a **Black iPhone in a Black "Blackweb" Case (Newport News Item #8)** in **DEJESUS-Franco's** right pants pocket. A narcotics K-9 was run on a black Acura (VA registration UXR-6343) which had been identified as **MIRANDA's** vehicle. The K-9 alerted, and the vehicle was searched. Members of the investigative team located a marijuana smoking device.

43.  Members of the investigative team advised **DEJESUS-Franco** of his Miranda rights. **DEJESUS-Franco** advised he understood his rights, and agreed to speak with investigators. **DEJESUS-Franco** was cooperative and freely answering questions during the interview. However, when members of the investigative team began asking **DEJESUS-Franco** about his cellular telephone and whether or not there would be text messages related to the distribution of illegal drugs, **DEJESUS-Franco** became more apprehensive. Members of the investigative team asked **DEJESUS-Franco** for his consent to search his cellular telephone, which he denied. Based on the evidence that was located, and on **DEJESUS-Franco's** statements, **DEJESUS-Franco** was charged with Possession of Marijuana, and released on a summons. As of this date, **DEJESUS-Franco** has not requested for his phone to be returned to him.

44.  After her arrest, **MIRANDA** was transported to the Hampton City Jail where she was



20

detained until the following day. **MIRANDA** was transported the following day to the Norfolk Federal Courthouse, where she had her Initial Appearance. **MIRANDA** returned in front of the court on March 2, 2020 for her Detention Hearing and Arraignment. At the conclusion of her Detention Hearing, **MIRANDA** was held without bond, and remanded to the custody of the U.S. Marshal's service. As of this date, neither **MIRANDA** nor any of her family members in the local community have requested for any of **MIRANDA's** electronics to be returned.

## Delays in Obtaining Follow Up Search Warrant

45. Beginning the week of March 2, 2020, various jurisdictions, to include the Newport News Police Department began receiving updated information on their roles and responsibilities in responding to the impending coronavirus epidemic. This has continued to expand, causing additional ancillary responsibilities to be assigned to various members of the investigative team.

46. Throughout the course of March, various members of the investigative team have been on varying degrees of self-quarantine. This has included members of the Virginia State Police (VSP) being ordered to work remotely for a period of time, and members of the Drug Enforcement Administration (DEA) working remotely for a period of time in order to avoid a possible exposure at an office.

47. On March 12, 2020, Virginia Governor Ralph Northam ordered K-12 schools in Virginia to close for a minimum of two weeks. This announcement came with little to no advanced notice. In general, this has caused a greater burden on families where both parents are employed. Specifically, members of the investigative team have been impacted due to having to balance responsibilities of employment, already negatively impacted as described above, and increased responsibilities at home. This has caused periods of time where members of the investigative team have been unable to be at work, or at a minimum to work in a limited



capacity.

## CONCLUSION

48. The information contained herein, describes a long-term, regularly conducted pattern of drug trafficking and distribution Carmen **MIRANDA** and Miguel **DEJESUS-Franco**. Based upon the information and evidence set forth above, your affiant respectfully submits that there is probable cause to believe that **MIRANDA** and **DEJESUS-Franco**, and others, some of whom are not yet known or fully identified, have committed, are committing, and will continue to commit the offenses described above.

49. The February 12, 2020 third superseding indictment in case 4:19-cr-47 charges that **MIRANDA**, among others, did unlawfully, knowingly, and intentionally use a communication facility, that is a telephone, in causing, committing, and facilitating the commission of an act constituting a felony violation of Title 21 of the United States Code, including but not limited to, conspiracy to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 846, as charged in this indictment.

50. Your affiant further believes that within the above listed target devices, which have been associated with **MIRANDA** and **DEJESUS-Franco**, probable cause exists to believe that the items further described in the Attachment B submitted with this affidavit are located within these devices.

51. Therefore, your affiant respectfully requests the issuance of a search warrant for the **White LG Smartphone, MEID: 089903642504556852 (Newport News Item #2), iPad in a Pink Case, Model: A2197, S/N: F9FZGFEAMF3P (Newport News Item # 4), iPhone in a Black Case (Newport News Item #5), Black/Grey iPhone S, Model: A1688, FCCID: BCG-E2946A (Newport News Item #7), and Black iPhone in a Black "Blackweb" Case.**



22

(Newport News Item #8).


FURTHER YOUR AFFIANT SAYETH NOT.

Gaelan A. Doskey, Task Force Officer
United States Department of Justice
Drug Enforcement Administration



Read and Approved:

Kevin Hudson
Assistant United States Attorney



Sworn and subscribed to before me
On this 3rd day of April 2020

Douglas E. Miller, USMJ
2020.04.03 12:38:50 -04'00'

Douglas E. Miller
United States Magistrate Judge
Norfolk, VA

23

## ATTACHMENT A

The devices to be searched are:

a. White LG Smartphone, MEID: 089903642504556852 (Newport News Item #2).

b. iPad in a Pink Case, Model: A2197, S/N: F9FZGFEAMF3P (Newport News Item # 4).

c. iPhone in a Black Case seized from Carmen MIRANDA on February 25, 2020 (Newport News Item #5).

d. Black/Grey iPhone S, Model: A1688, FCCID: BCG-E2946A (Newport News Item #7).

e. Black iPhone in a Black "Blackweb" Case  (Newport News Item #8).